Lee, et al. *v.* Haltom Lumber Company, et al.

No. 40413 March 25, 1957 93 So. 2d 641

*C. F. Cowart,* Meadville; *R. L. Netterville,* Natchez, for appellants.

658

*Laub, Adams, Forman & Truly,* Natchez, for appellees.

ARRINGTON, J.

Hester Lee and Mary Emma Shorte, widow and dependent sister respectively of Ed Lee, deceased, filed claim for benefits under the Mississippi Workmen's Compensation Law against Haltom Lumber Company and the United States Fidelity and Guaranty Company, its insurance carrier. From a judgment of the Circuit Court of Franklin County reversing the order of the Commission, the claimants appeal.

This case was tried on stipulation as to the facts and documentary evidence offered on the part of the claimants and the defendants. There is no dispute as to the facts, as the defendants offered no testimony when the claimants rested their case.

"Stipulation by the defendants: It is stipulated and agreed by the parties that Ed Lee was employed by Haltom Lumber Company as a regular employee from September 3rd, 1953 to October 21st, 1954, on which date his employment was terminated. It is further agreed that on May 30th, 1955, Ed Lee was re-employed by Haltom Lumber Company as a regular employee and worked for Haltom Lumber Company until his death on July 5th, 1955. Before re-entering the employment of Haltom Lumber Company on May 30th, 1955, Ed Lee was given a physical examination by Dr. J. B. Barlow, M. D. of Roxie, Mississippi, record of such examination is marked General Exhibit 'A' and made a part hereof. It is further stipulated that Ed Lee had been in the employ of Haltom Lumber Company for only approximately five weeks immediately prior to his death, and that in arriving at the average weekly wage hereinafter stipulated, the wages paid Bethel Keys, an employee doing the same work and paid at the same wage scale as Ed Lee, for the fifty-two weeks immediately preceding July 5th, 1955, and based on these figures it is stipulated that the average weekly wage of Ed Lee was $27.76 per week."

"Stipulation by the claimants: It is stipulated and agreed by the parties hereto that on the morning of 5 July 1955, Ed Lee reported for work as usual and resumed his regular, usual and customary duties, and that after working approximately fifteen minutes he became unable to work and Dr. J. B. Barlow was summoned."

The claimants also introduced in evidence Form B-3, the employer's first report of industrial injury, dated August 9, 1955, and also a certified copy of the record of death of Ed Lee. It was further stipulated by the parties as follows:

"It is further stipulated and agreed between the parties that the late Ed Lee, after entering into his

employ with the employer 30 May, 1955, worked five working days the first week of his employment, worked five days of the second week of his employment, worked five days of the third week of his employment, worked four days of the fourth week of his employment, and two days of the fifth week, the second day being the date of his death."

The claimants introduced Dr. Clifford Tillman, a specialist in cardiology and internal medicine. He was asked the following question: "Now, doctor, I am going to ask you to assume the following facts to be true: That Ed Lee, a negro man approximately fifty-one years of age, was given a pre-employment physical examination prior to his employment by a general practitioner of medicine in connection with his application for employment by the Haltom Lumber Company of Roxie, Mississippi. The physical examination at that time was not significant insofar as there was no pathological findings by the general practitioner. The examination of the heart at that time revealed a blood pressure of . . . 168 over 110, pulse of 76 with an occasional systole. The general practitioner pronounced Ed Lee physically fit for employment with Haltom Lumber Company. Eddie Lee began employment immediately and worked for Haltom Lumber Company until the date of his death of 5 July, 1955. Ed Lee's duties were that of a common laborer, better known as working on the green chain just off the off-bearer of the saw, and he began his work on the 30th day of May, 1955, and worked five days of the first week, five days of the second week, five days of the third week, four days of the fourth week, and into the fifth week he worked two days, one being the date of his death. On the morning of his death, the late Ed Lee reported to work and resumed his usual and customary duties on the green chain, and worked there for approximately fifteen minutes, and he became unable to

work. The same general practicing physician was summoned immediately to the scene, and upon the doctor arriving at the saw mill he pronounced Ed Lee dead, and he diagnosed the cause of his trouble as dying from coronary thrombosis. That was the diagnosis of Dr. Barlow. Now, doctor, assuming those facts to be true, and further assuming that the diagnosis made by Dr. Barlow was correct, do you have an opinion as to whether the work which Ed Lee was doing on the morning of his death, and the work that he had been doing since beginning work for the Haltom Lumber Company, and lifting and handling the lumber on the green chain was probably the proximate cause, or was a contributing cause in any way to his death, or aggravated any present existing condition that precipitated the death?

"A. The question of cause of coronary thrombosis as to its basic cause is medically unsettled, and from the standpoint of making a statement relative to primary cause of this disease, such would be impossible. On the basis of concern over precipitating causes or trigger mechanisms which may precipitate coronary thrombosis, we have a fair amount of information available. Though one may have the incident of coronary thrombosis occur under almost any circumstances, there is little question that exertion is a contributing cause to the precipitation of the event, and as an aggravating cause of the previously existing disease of the coronary arteries.

"Q. Do you have an opinion as to whether, assuming the facts to be true, the work aggravated an existing condition, helped precipitate death?

"A. Yes, sir.

"Q. What is that opinion?

"A. Assuming that the facts are true, the exertion of the work, and I am interpretating this from the standpoint of this being common labor work, would serve

to aggravate any preexisting disease of the coronary arteries.

"Q. Assuming these facts to be true, do you have an opinion as to whether the work that Ed Lee was doing prior to the date of his death and subsequent to his employment and while in the employ of the employer, contributed to his death?

"A. I'm sorry, I didn't get the question.

"Q. Do you have an opinion, assuming these facts to be true and cause of death to be correct according to Dr. Barlow, do you have an opinion as to whether the work done by Ed Lee for his employer on the first, second, third, fourth week and up to the days of his death, contributed to this death?

"A. Yes, we would have to say again that physical exertion in this particular patient would have contributed to the onset of coronary thrombosis."

The attorney-referee asked the following question:

"Q. I have one question I would like to ask you. Do you have or attach any significance to the blood pressure reading of 168/110 with a pulse of 76, insofar as it relates to the structural weakness, if it could be called that?

"A. Yes, sir, I do. A blood pressure of that level is distinctly abnormal and represents what we would consider hypertensive vascular disease. It's an accepted medical fact that people with hypertensive vascular disease have a higher instance of coronary thrombosis than normal tensive people, and so I would attach significance to that."

Dr. Barlow's report of the physical examination of the deceased, Ed Lee, dated May 30, 1955, shows a blood pressure of 168/110. The employer's report, form B-3, shows that the Haltom Lumber Company was engaged in the business of manufacturing lumber; that the deceased, Ed Lee, was working as a laborer-green

chain; that he was assorting lumber on chain; that he collapsed and died at 8:30 A. M., July 5, 1955; that he was attended by Dr. James Barlow. The death certificate shows that deceased was working as a laborer in a sawmill and died of coronary thrombosis due to arteriosclerosis; said certificate was signed by ''James B. Barlow, M. D.''

The appellees objected to the hypothetical question on the ground that it was not based on facts in evidence and on the further ground that there were not sufficient facts with respect to the type work he was doing that would justify any opinion on that work. The objection was overruled. The attorney-referee, in awarding compensation, in part, said: ''I find that on July 5, 1955, Ed Lee, an employee of Haltom Lumber Company, was engaged in his usual duties with that company; that on that date said Ed Lee collapsed and died as a result of coronary thrombosis; that the manual labor being performed by Ed Lee was a precipitating cause of the death and 'accidental' within the meaning of the Mississippi Workmen's Compensation Act, as amended; that the accident was within the course and scope of said Ed Lee's employment with the Haltom Lumber Company; . . . .'' This finding was affirmed by the Commission.

 █ We are of the opinion that the finding of the Commission is supported by substantial evidence as the only reasonable inference to be drawn from the facts set out above was that the deceased was performing manual labor handling lumber at the time of his collapse and death. Any other construction would be in our opinion unreasonable. J. & B. Manufacturing Co. v. Cochran, 216 Miss. 336, 62 So. 2d 378; Reyer v. Pearl River Tung Co., 219 Miss. 211, 68 So. 2d 442. It is well settled by this Court that the Commission is the trier of the facts and any question of fact decided by it is conclusive on appeal if it is supported by substantial

evidence. Malley v. Over-the-Top, Inc., 90 So. 2d 678. The testimony of Dr. Tillman is not disputed in that physical exertion would contribute to the onset of coronary thrombosis. In the case of Ingalls Shipbuilding Corp. v. Byrd, 215 Miss. 234, 60 So. 2d 645, this Court held:

"We summarize our views by quoting with approval the following: 'Pre-existing disease or infirmity of the employee does not disqualify a claim under the "arising out of employment" requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought.' Larson's Workmen's Compensation Law, Vol. 1 Sec. 12.20, p. 170. The quoted text is supported by decisions from the courts of forty-one of the forty-eight states."

We have held that the exertion on the occasion in question need not be greater than the usual and customary work. Cowart v. Pearl River Tung Co., 218 Miss. 472, 67 So. 2d 356; Pearson v. Dixie Electric Power Assn., 219 Miss. 884, 70 So. 2d 6; Schilling v. Miss. State Forestry Commission, 85 So. 2d 562, and authorities there cited. Cf. Prince v. Nicholson, 91 So. 2d 734 (Adv. Sheet No. 3). We are of the opinion that the circuit court erred in reversing the award of the Commission. It follows that the judgment of the circuit court is therefore reversed and the finding of the Commission is reinstated.

As requested by appellants, interest at the rate of six percent is allowed on each weekly installment from its due date until paid, and an attorney's fee of 33-1/3% of the award.

Reversed and remanded.

*Roberds, Hall, Lee, Kyle* and *Holmes, JJ.*, concur.

GILLESPIE, J., dissenting.

After due consideration of this case and several conferences, I am constrained, with deference, to dissent in in part. In my opinion the case should be remanded to the Commission for the development of the facts, which was not done on the original hearing. Neither the Commission nor the courts should be called upon to decide a case of this kind without knowing what the facts are. It is a mistake, I think, to rely upon the employer's report of industrial injury, known as form B-3, to supply the facts on which to grant or deny an award. The function of form B-3 is to report an injury, not to supply the facts. In this case it was signed by the bookkeeper, and obviously was hearsay. The designation of an employee's job classification is an insufficient basis in this kind of case to base an award on the ground that his duties aggravated a pre-existing heart condition.

The only proof in this case was the pre-employment medical report which showed that the deceased had high blood pressure, the stipulation that the deceased reported to his usual work fifteen minutes before he collapsed and died, and the B-3 form designating the deceased as a "laborer-green chain." Of course the doctor testified that the work of the deceased probably triggered or contributed to his heart attack but the trouble is that the hypothetical question on which causal relationship is based assumed without proof that deceased was doing "common" labor; that he was "lifting and handling lumber"; and that he was working "just off the off-bearer of the saw." I have searched the record in vain to find evidence to support such assumptions. The objection to the hypothetical question propounded to the doctor should have been sustained.

*McGehee, C. J.* and *Ethridge, J.*, join in this dissent.