BRADY, Justice:
This is an appeal from the Circuit Court of Winston County, Mississippi, wherein the appellant sought damages, both actual and punitive, resulting from false arrest, false imprisonment and assault committed by the appellee, while acting in his official capacity, against the appellant. The jury returned a verdict for the appellee and from this verdict an appeal was taken.
The appellant alleged that the appellee arrested him through personal animosity growing out of his repeating a statement by one Bobby Flake, that Flake had on a former occasion delivered whisky to the home of the appellee. The appellant alleged that he was not intoxicated and that he had violated no laws at the time of his arrest by ■ the appellee. The appellee admitted making the arrest and placing the plaintiff in jail, but pled probable cause and justification on the grounds that the appellant was drunk at the time of his arrest.
The appellant produced five impeccable witnesses whose unbiased, objective testimony completely exonerated the appellant from being intoxicated at the time of his arrest. The first witness to testify was Mississippi Highway Patrolman Tommy Wylie, before whom appellant appeared with two Negro boys who desired to obtain a driver’s license. In the patrolman’s presence the . appellant made out the necessary applications for the signatures of the two young Negro men and was in the presence of the patrolman for approximately twenty minutes or more. The patrolman categorically asserted that if appellant had been drinking or drunk he “would certainly have put him in jail before he had time to come upstairs.”
There were three members of the Louisville Civitan Club who were engaged in selling candy in front of the courthouse, namely, Mr. Randolph Moore, who is an interrogator for the Mississippi Employment Commission, Mr. Marion Ball, who is a public accountant, and Mr. Charles Stewart, who is a state representative, all of whom were within five or six feet of the appellant, and the record discloses that for about ten or fifteen minutes they conversed with appellant. All three unequivocally stated that the appellant was not, in their opinion, drunk or under the influence of intoxicating liquors. Mr. Wilbur Bennett, who operates a service station, testified that he was with the appellant for approximately thirty minutes, which the record discloses was immediately before appellant with the two Negro men went to the courthouse; that the appellant was not drunk and gave no indication of being drunk.
This completely impartial and objective testimony is disputed solely by the arbitrary statement of appellee that the appellant was drunk. It should be noted that the appel-lee when he first testified, as an adverse witness, while being cross examined by appellant’s attorney stated: “I had observed Mr. Fuller when he come through the court house approximately 9:30 or 10:00 o’clock, I’m not sure of the time, but I was in the Sheriff’s office there and I could observe him when he came through that he was intoxicated by his redness and even by his walk, and when he come back through in twenty or thirty minutes I followed him *576 outside and stood out for a moment while he bought some candy and told him to come back in, I wanted to talk to him.” On further cross-examination appellee was asked: “You stated that you saw him walk into the court house about thirty minutes before that. [Time of the arrest.] Was he in the same condition then as he was when he walked out?” The appellee replied: “I expect he was. I didn’t see him. When he went out is when I seen him and went and told him I wanted to talk to him.” The appellee then admitted that, “I waited until he come out.” The record is clear that after the appellee had taken the appellant into the sheriff’s private office he arrested him. The appellant testified that the appellee arrested him in the private office for being drunk after he had accused the appellant of “telling a bunch of lies on him” and after the appellant had told him he believed the statement of Bobby Flake that he had delivered whisky to appellee’s home two weeks before he became deputy sheriff. The appellee asserted that the conversation took place after the arrest and after they had started to the jail.
Additionally, the record discloses that deputy sheriff Jack Cockrell was in the sheriff’s office at the time of or immediately after the appellant’s arrest. He saw the appellant and, together with the appellee, accompanied him to the jail where he was turned over to the jailer and deputy sheriff Roy Callahan. Appellant stated that he asked Mr. Cockrell at the time he was arrested, “did he think I was drunk,” and that Cockrell replied, “He wasn’t anything to it.”
It is significant that Mr. Cockrell refused to answer the question and that neither he nor the jailer, Mr. Callahan, were called as witnesses to substantiate or corroborate appellee’s statement that the appellant was drunk. Likewise significant is the fact that although the sheriff, co-defendant, who was a witness for the ap-pellee and himself, was never asked if he thought the appellant was drunk at the time of the arrest. He, too, with his deputies, Cockrell and Callahan, had equal and ample opportunity to hear and observe the appellant as did appellee Parks, but did not testify that the appellant was drunk. It is a well recognized rule in this and other states that when witnesses who are familiar with facts and can be obtained to testify are not used, it is presumed that their testimony would be adverse to the interest of the litigant who did not subpoena them as witnesses.
The one witness other than the appellee utilized by the appellee in his effort to establish probable cause for the arrest of the appellant was Walter Webb, Justice of the Peace of District No. 1 of Winston County. It is of import to note that, irrespective of all efforts on the part of counsel for appellee, this witness flatly refused to testify that the appellant at the time of his arrest gave any indications of being drunk or that he was drunk. It remains, therefore, solely upon the testimony of the appellee that the appellant was drunk upon which the jury could rely. The two factors upon which the appellee based his testimony of intoxication were “redness and even by his walk.”
In passing, the appellee made affidavits against the appellant for being drunk in a public place before two or more witnesses and for carrying a concealed weapon in the Justice of the Peace Court of District No. 1 of Winston County, Walter Webb, Justice of the Peace. When the case was called for trial the appellant announced ready, and at the request of appellee the case was continued to a subsequent date. When that date arrived the case was again called for trial and appellant again announced ready, the appellee made a motion that the charge be dismissed, which the justice of the peace did.
After the plaintiff-appellant had rested, the codefendant, Employers Mutual Casualty Company, made a motion for a directed verdict in which appellant joined and the court stated erroneously that the *577 case of King v. Kelly, 243 Miss. 160, 137 So.2d 808 (1962) was controlling and granted a directed verdict. It was error for the court to grant also a. directed verdict for the defendant sheriff, Fred Sloan.
The jury returned a verdict for the ap-pellee after the court denied an improperly drawn instruction requested by the appellant on the issue of the burden of proof. In determining whether the judgment in this cause should be affirmed, we need only to consider the question of whether the court erred in overruling the motion of the appellant for a new trial on the grounds that the verdict of the jury was against the overwhelming weight of the evidence.
In retrospect, we have repeatedly held that it is in the province of the jury to determine the weight and worth of testimony and credibility of witnesses. Independent Life & Accident Ins. Co. v. Mullins, 252 Miss. 644, 173 So.2d 663 (1965). This Court has been most reluctant, and properly so, to disturb the findings of fact by a jury, a chancellor, or a commission duly constituted as the trier of facts. This Court is fully cognizant of the intrinsic merit of a verdict by a jury in the administration of justice and in the preservation of self-government. Nevertheless, when the facts, as in the case at bar, conclusively show that the verdict of the jury is against the overwhelming weight of the evidence, it becomes the duty of this Court to reverse that verdict so that justice may be done and in order that the right of trial by jury may endure.
While it is true that numbers do not increase the weight of the evidence, it is also true that “evidence intrinsically persuasive coming from disinterested witnesses of unimpeached reliability reciting facts contemporaneously observed from an ideal vantage point, nowhere contradicted and hence binding on court and jury alike.” Walton v. Owens, 244 F.2d 383 (5th Cir. 1957); Jones v. Richards, 254 Miss. 617, 181 So.2d 923 (1966); Fisher v. Daniels, 252 Miss. 662, 173 So.2d 908 (1965); Shivers v. Biloxi-Gulfport Daily Herald, 236 Miss. 303, 110 So.2d 359 (1959); Marley Constr. Co. v. Westbrook, 234 Miss. 710, 720, 107 So.2d 104 (1958); Lee v. Haltom Lbr. Co., 230 Miss. 655, 93 So.2d 641 (1957); Masonite Corp. v. Fields, 229 Miss. 524, 91 So.2d 282 (1956); Webster Constr. Co. v. Bates, 227 Miss. 207, 85 So. 2d 795 (1956) ; Reyer v. Pearl River Tung Co., 219 Miss. 211, 68 So.2d 442 (1953); 32A C.J.S. Evidence § 1038 (1964); Grant, Summary of Mississippi Law § 1311 (1969).
“Thus out of this nettle,” error, “we pluck the flower,” correction, and fortify the sacred right of trial by jury that it may endure.
On a retrial of this cause, the errors herein committed can be avoided.
For the above reasons, this cause is reversed and remanded.
Reversed and remanded.
ETHRIDGE, C. J., and JONES, INZER and ROBERTSON, JJ., concur.