564 So.2d 1374 (1990)
Gloria J. SIMPSON
v.
STATE FARM FIRE AND CASUALTY COMPANY.
No. 07-CA-58861.
Supreme Court of Mississippi.
May 30, 1990.
Rehearing Denied August 8, 1990.
*1375 Margaret P. Ellis, Charles R. McRae, McRae & Ellis, Pascagoula, and Alfred L. Felder, McComb, for appellant.
Harry R. Allen and Reilly Morse, Bryan Nelson Allen Schroeder & Cobb, Gulfport, for appellee.
Before ROY NOBLE LEE, C.J., and PITTMAN and BLASS, JJ.
PITTMAN, Justice, for the Court:
This case comes to this Court for the second time on appeal. Robert Simpson and his wife, Gloria, sued State Farm in Jackson County Circuit Court in 1980, alleging a bad faith refusal to pay a fire loss claim. The jury found for the Simpsons, awarding them contractual damages, compensatory damages, and punitive damages. On appeal this Court reversed and rendered the punitive damages award, reversed and rendered the compensatory damages award, and reversed and remanded the contractual damages. A second trial was held in Jackson County Circuit Court. The jury found for Gloria Simpson, awarding her $50,690.00, the policy limits. This award was later reduced to $22,876.25 due to credit given State Farm for the mortgage on the Simpsons' home. Gloria Simpson appeals, assigning as error:
I. THE TRIAL COURT ERRED IN NOT RECOGNIZING THAT EXCEPTIONS TO THE LAW OF THE CASE DOCTRINE SHOULD HAVE ALLOWED THE ISSUES DECIDED BY THE SUPREME COURT IN SIMPSON I TO BE RE-LITIGATED
II. PREJUDGMENT INTEREST SHOULD HAVE BEEN ALLOWED TO PLAINTIFFS
III. IT WAS ERROR TO ALLOW STATE FARM TO RECEIVE CREDIT WHEN IT DID NOT AFFIRMATIVELY PLEAD A SETOFF
Finding that assignments II and III are well taken, we affirm in part and reverse and render in part.

FACTS
Robert and Gloria Simpson and their two children were residents of Gautier, Mississippi, in August, 1978. State Farm insured their home, providing coverage of $28,000.00 on the dwelling, $14,000.00 on the contents, and $6,140.00 for additional living expenses. On August 12, 1978, the Simpsons received notice of an automatic increase in coverage to $30,700.00 for the dwelling and $15,350.00 for the contents with notice of increased premium. On August 16 the Simpson home burned, leaving the house and the contents a total loss. The Simpsons claimed that they were returning from a visit with Robert Simpson's sister at 5:00 a.m. when they discovered the house in flames. State Farm investigated, determined that the fire was of incendiary origin, and denied the Simpsons' claim. As a result the Simpsons filed suit in Jackson County Circuit Court, alleging a bad faith refusal to pay the fire loss. The jury returned a verdict in favor of the Simpsons, awarding $22,876.25 in contract damages under the policy, $227,123.75 in compensatory damages, and $250,000.00 in punitive damages. The trial court authorized a remittitur of $50,000.00 on the compensatory damage award and cancelled the Simpsons' mortgage. State Farm appealed, and the Simpsons cross-appealed. This Court reversed and rendered the punitive damages award, reversed and rendered the compensatory damages award, and reversed and remanded the contract damages. See State Farm Fire and Casualty Co. v. Simpson, 477 So.2d 242 (Miss. 1985) (hereinafter Simpson I; all subsequent proceedings will be referred to as part of Simpson II).
In late 1986 the parties prepared to go to trial again, this time only on the issue of contract damages. On October 23, 1986, the Simpsons filed a Motion for Relief from *1376 Judgment, alleging that there had been a change in the law on punitive damages in bad faith cases, and this change should entitle them to re-litigate the issue of punitive damages in Simpson II. This Motion was overruled. On October 24, in response to interrogatories, the Simpsons listed Barry Jones as a non-expert witness who might be called at trial.
The trial in Simpson II was held October 27-31, 1986. Robert Simpson did not testify at the second trial. He and Gloria Simpson were divorced on December 31, 1985. Gloria Simpson is the sole Appellant. Barry Jones was called by the Simpsons as a rebuttal witness after State Farm had put on its case. Jones had also been identified as a potential witness in Simpson I, but did not testify. Jones stated, when shown Defendant's Exhibit 15, a photograph of the floor of the Simpson home taken after the fire, that he didn't "believe this particular photograph actually depicts the scene as it was. It appears that the pattern may have been enhanced by the liquid use[d] to clear the area."
The jury found in favor of the Simpsons, awarding $50,690.00, their coverage under the policy: $30,700.00 on the structure, $15,350.00 on the contents, and $4,640.00 for living expenses. On November 5, 1986, State Farm filed a Motion for Judgment N.O.V. or in the Alternative for a New Trial. State Farm also filed a Motion for Relief from Judgment or Order a Credit Towards Satisfaction of Judgment or for a Remittitur, alleging that it had paid the Simpsons' mortgagee, Kimbrough Investment Company, $27,813.75, and that the jury award to the Simpsons should be reduced by that amount. On November 10, the Simpsons filed a Motion for Trial for Extra Contractual and Punitive Damages or in the Alternative Judgment Notwithstanding the Verdict on Punitive and Extra Contractual Damages. The Simpsons also moved to assess prejudgment interest. After a hearing State Farm's motion for a credit was sustained, and the other motions were overruled. Gloria Simpson appeals from the circuit court's judgment.

I. SHOULD THE EXCEPTIONS TO THE LAW OF THE CASE DOCTRINE ALLOW THE ISSUES DECIDED BY THE SUPREME COURT IN SIMPSON I TO BE RE-LITIGATED?
Gloria Simpson first argues that though this Court, in Simpson I, rendered judgment against her on the issues of extracontractual and punitive damages, she should have been able to re-litigate those issues in Simpson II. She argues that while Simpson I would normally be recognized as "the law of the case" for all subsequent proceedings, there are exceptions to this rule, and her case fits these exceptions.
The law of the case doctrine, as recognized by this Court, is as follows:
The doctrine of the law of the case is similar to that of former adjudication, relates entirely to questions of law, and is confined in its operation to subsequent proceedings in the case. Whatever is once established as the controlling legal rule of decision, between the same parties in the same case, continues to be the law of the case, so long as there is a similarity of facts. This principle expresses the practice of courts generally to refuse to reopen what has previously been decided. It is founded on public policy and the interests of orderly and consistent judicial procedure.
Mississippi College v. May, 241 Miss. 359, 366, 128 So.2d 557, 558 (1961). "The rule is distinct from the rule of stare decisis and it is not a limitation upon the power of the court." Continental Turpentine and Rosin Co. v. Gulf Naval Stores Co., 244 Miss. 465, 479, 142 So.2d 200, 206-207 (1962). "But if the facts are different, so that the principles of law announced on the first appeal are not applicable, as where there are material changes in the evidence, pleadings or findings, a prior decision is not conclusive upon questions presented on the subsequent appeal." Continental Turpentine, 244 Miss. at 480, 142 So.2d at 207. One further exception to the doctrine can be found in Brewer v. Browning, 115 Miss. 358, 364, 76 So. 267, 269 (1917), where this Court stated:

*1377 We do not think, however, that this rule is so fixed and binding upon the court that it may not depart from its former decision on a subsequent appeal if the former decision in its judgment after mature consideration is erroneous and wrongful and would lead to unjust results. Where the facts are the same, and where there has been no change of conditions or situations as that a change of decision would work wrong and injustice, the court may, on the subsequent appeal, correct its former decision where it is manifestly wrong.
Gloria Simpson also relies on the federal version of the doctrine, which varies slightly from the doctrine announced by this Court. The Fifth Circuit rule on the doctrine can be found in White v. Murtha, 377 F.2d 428, 431-432 (5th Cir.1967):
While the `law of the case' doctrine is not an inexorable command, a decision of a legal issue or issues by an appellate court establishes the `law of the case' and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.
See also Morrow v. Dillard, 580 F.2d 1284 (5th Cir.1978) (citing White). Put another way, the mandate issued by an appellate court is binding on the trial court on remand, unless the case comes under one of the exceptions to the law of the case doctrine. This "mandate rule" is a specific application of the law of the case doctrine. Leggett v. Badger, 798 F.2d 1387 (11th Cir.1986). Because a question of law is presented, this Court conducts de novo review of the circuit court decision not to reopen issues decided in Simpson I. UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc., 525 So.2d 746, 754 (Miss. 1987).

A. SUBSTANTIALLY DIFFERENT EVIDENCE IN SIMPSON II
Gloria Simpson first alleges that State Farm either unintentionally or intentionally doctored certain photographs so as to place her claim under this exception to the "law of the case." The alleged manipulation involved certain photographs, introduced in Simpson II as Defendant's Exhibit 15, and introduced in Simpson I as part of the SEA Fire Analysis, Plaintiff's Exhibit 8, and as part of Plaintiff's Exhibit 10. The photographs in question were taken by Phil Hampton, a fire investigator for Systems Engineering Associates, on August 28, 1978. Mr. Hampton was employed by State Farm and testified for State Farm in both trials. Hampton was accompanied to the Simpson home that day by Oren Haddock, a State Farm employee who investigated the fire. According to Gloria Simpson, this Court in Simpson I relied heavily on these photographs in finding that State Farm had an arguable reason to deny the claim, and could escape liability for punitive damages. It is true that this Court did list "[t]he photographs taken by Systems Engineering Associates which graphically depict the burn pattern" as one of ten items which State Farm was able to consider in deciding to deny the Simpsons' claim on November 1, 1978. Simpson I, 477 So.2d at 251-252.
The allegation that the photographs making up Defendant's Exhibit 15 were not what they appeared to be came from Barry Jones, called by the Simpsons as a rebuttal witness in Simpson II. Mr. Jones was shown Defendant's Exhibit 15, and in response stated that "[i]t appears to me that this photograph was shot while this area was still wet... . I don't believe this particular photograph actually depicts the scene as it was. It appears that the pattern may have been enhanced by the liquid use[d] to clear the area." Mr. Jones could not remember when he visited the fire scene, but it was several years after the fire. Jones stated on cross-examination that he "believe[d] that particular pattern is probably water that was on the sink at the time of the photograph." When asked if Phil Hampton would use water to simulate *1378 a burn pattern, Jones said that he might have done it to enhance the patterns he was seeing. When asked if Norm Cowart, Deputy State Fire Marshal, would use water to try to alter the appearance of the pattern, Jones said that "[m]ost fire investigators pour water on areas to clear them out. Now, if the photograph was shot while the water was still there I don't know if that's an intentional act or it's just part of their investigative technique. I personally don't do that, but someone else may."
Gloria Simpson claims that Jones's testimony shows deceit, misrepresentation, and fraud on the part of State Farm. We find the testimony to be equivocal at best. The record shows that these disputed photographs were introduced in Simpson I. Mr. Jones was available as a witness in Simpson I but was never called. In Baumer v. United States, 685 F.2d 1318 (11th Cir.1982), the substantially different evidence was evidence which Baumer possessed during his first trial, but decided not to use. The 11th Circuit, in rejecting this as an exception to the law of the case, stated:
There is nothing in the record to indicate that the evidence produced at the hearing after remand was unavailable to the taxpayers during the first trial. The taxpayers simply chose not to produce that evidence. They chose their trial strategy, litigated accordingly, and lost. They are not now entitled to resurrect a previously abandoned issue.
Baumer, 685 F.2d at 1321. In Simpson II, the photographs in question were introduced through Robert Bell, a consultant in failure analysis who investigated the fire for the Simpsons and testified for them. When Defendant's Exhibit 15 was introduced, Mr. Bell was asked if he had taken any photographs which showed the same dark pattern. Bell answered, "The same dark pattern. I'm sure that I do. And I saw that, but I do not have those photographs handy." Bell agreed that the dark area was where the floor had been burned, although Bell asserted that the floor burned because the roof dumped in on it. Gloria Simpson claims that because State Farm did not call witnesses to rebut Jones's charge, there is a presumption that their testimony would not have been favorable to State Farm. Fuller v. Sloan, 230 So.2d 574, 576 (Miss. 1970). Whatever presumption may have arisen is not a strong one. Hampton and Cowart could have been questioned about this alleged fraud on cross-examination, and were not.
Gloria Simpson also argues that a significant portion of her photographic evidence never reached this Court after the trial in Simpson, I. She specifically mentions Plaintiffs' Exhibits 1, 6, 7 and 10. Exhibit 1 is included in the record in Simpson I. The other three exhibits did not reach this Court. Exhibit 6 consisted of a board containing 15 photographs. Exhibit 7 consisted of a board containing 7 photographs. Exhibit 10 consisted of a board containing 8 photographs. The majority of the photographs in question were taken by Gerald Baxley, an arson investigator for the City of Pritchard, Alabama, who testified for the Simpsons in Simpson I. Baxley took the pictures between January 12 and approximately February 15, 1979. The other pictures making up Exhibit 10 were blowups from SEA Fire Analysis, which were available to this Court in Simpson I as Plaintiffs' Exhibit 8, already mentioned earlier. Gerald Baxley did not testify in Simpson II. Several of the photographs in question were re-introduced in the second trial. It does not appear that it was the Simpson's failure which caused these exhibits not to be sent.
Gloria Simpson, therefore, argues that without this evidence this Court could not completely review and equitably decide Simpson I. Simpson I states that the Simpsons' claim was denied on November 21, 1978, and that State Farm decided to deny the claim on November 1, 1978. Simpson I, 477 So.2d at 250-251. The issue which involved review of photographic evidence was whether or not State Farm had an arguable basis, in law or fact, for denying the claim. The Simpson I analysis took into consideration the evidence which was available to State Farm at the time that this decision was made, apparently *1379 November 1, 1978. The question then appears to be one of relevance. We have reviewed the photographs in question and find that evidence which did not exist in November 1978, was not and is not relevant to this question of State Farm's arguable basis to deny the claim. Gloria Simpson has failed to show that the evidence presented in Simpson II was substantially new or different than that which was available in Simpson I.

B. SUBSTANTIAL CHANGE IN INTERPRETATION OF BAD FAITH LAW
As stated, the courts of this state have not yet recognized this exception to the law of the case doctrine. Because it is not dispositive, we discuss it but save the adoption of this exception for another case. According to Gloria Simpson, an important aspect of the law of bad faith changed between the time Simpson I was handed down by this Court and the trial in Simpson II. We view this assignment in the context of bad faith law between the time Simpson I was handed down, August 14, 1985, and the time of the second trial, October 27, 1986. See also Delano v. Kitch, 663 F.2d 990 (10th Cir.1981) (law of case doctrine must yield to a controlling decision between the first ruling and retrial).
Prior to the decision in Simpson I, this Court had been implementing a procedure for submission of punitive damages to the jury in bad faith cases. The procedure was discussed in Reserve Life Insurance Co. v. McGee, 444 So.2d 803 (Miss. 1983). According to Reserve Life, the trial court would decide as a matter of law whether the insurer had an arguable reason to deny payment of the claim in question. An arguable reason to deny meant that the issue of punitive damages could not be submitted to the jury. The trial court's inability as a matter of law to find that there was an arguable reason to deny would send that issue to the jury. Submission of this question to the jury would be followed by another decision of law for the trial court, whether or not a punitive damages instruction was warranted. Reserve Life, 444 So.2d at 809.
Reserve Life was followed by Blue Cross & Blue Shield of Miss. v. Campbell, 466 So.2d 833 (Miss. 1984). This Court granted a petition for rehearing in order to clarify its holding in Reserve Life. Campbell emphasized that the question of bad faith was not always one for the jury. A reasonably arguable basis for denial of the claim, in law or fact, would prevent the submission of the question of bad faith. It was further stated in Campbell:
It can be argued with considerable persuasion that unless the trial judge grants a directed verdict to the insured plaintiff on the contract claim, then, as a matter of law, the insurance carrier has shown reasonably arguable basis to deny the claim; and, therefore, the carrier should never be subjected to the possibility of punitive damages based upon `bad faith.' There is compelling logic behind this argument and this would certainly appear to be true in the vast majority of cases. This criterion should ordinarily determine the answer to the question.
Yet, the test is not infallible. Under some contrived or specious defense, an insurance carrier may be entitled to have the jury pass upon the issue of liability under the contract, yet not thereby insulate itself against a punitive damage claim based upon bad faith. There may be other reasons not yet encountered which will give an insurance carrier a defense on the contract itself, and yet nevertheless the carrier should be subject to a bad faith claim.
Campbell, 466 So.2d at 843.
Next came Simpson I. This Court reversed and rendered on punitive damages, finding that State Farm should have received a peremptory instruction on this issue. In doing so the Court repeated the rule from Campbell, that a directed verdict in favor of the insured on the contract claim should be in the majority of cases a reasonable prerequisite to punitive damages. Simpson I, 477 So.2d at 252.
This was the state of the law at the time of Simpson I. Gloria Simpson's objection *1380 is that "after the decisions of Campbell and Simpson, the law has evolved whereby punitive damages are allowed without first obtaining a directed verdict on contractual damages and are assessed when the insurer improperly investigates claims and arbitrarily denies them. Yet, it was in the directed verdict frame of mind that this Court decided in Simpson."
The bad faith cases decided by the Court between August 1985, and October 1986, included Bankers Life & Casualty Co. v. Crenshaw, 483 So.2d 254 (Miss. 1985), National Life & Accident v. Miller, 484 So.2d 329 (Miss. 1985), Southern United Life Insurance Co. v. Caves, 481 So.2d 764 (Miss. 1985), Mississippi Farm Bureau Mutual Insurance Co. v. Todd, 492 So.2d 919 (Miss. 1986), Aetna Casualty & Surety Co. v. Day, 487 So.2d 830 (Miss. 1986) and Employers Mutual Casualty Co. v. Tompkins, 490 So.2d 897 (Miss. 1986). As is stated in Simpson I, the requirement of a directed verdict for the insured on the contract claim before the issue of punitive damages may be submitted to the jury may be appropriate in the majority of cases, but there are exceptions. This "requirement" has been ignored in Bankers Life, Miller, and Tompkins. The procedure was followed in Caves and Todd, and was emphatically reaffirmed in Day. The trial judge did not err when he found that this exception to the law of the case doctrine was inapplicable to the case at bar.

C. MANIFEST INJUSTICE
"Under [the] law of the case doctrine, as now most commonly understood, it is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice." Arizona v. California, 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 1391 n. 8, 75 L.Ed.2d 318 (1983). In the federal courts, showing a manifest injustice so as to come under this exception amounts to a great burden. As the D.C. Circuit stated,
we take this opportunity to emphasize that this court will not, absent truly `exceptional circumstances,' look favorably on arguments against the law of the case which fall only under the `manifest injustice' rubric. We do not intend to allow this avenue of attack on the law of the case to become an auxiliary vehicle for the repetition of arguments previously advanced, without success, in appellate briefs, petitions for rehearing, and petitions for certiorari.
Laffey v. Northwest Airlines, 740 F.2d 1071, 1082-1083 (D.C. Cir.1984); see also Short v. United States, 228 Ct.Cl. 535, 661 F.2d 150 (1981) (manifest injustice exception involves stringent test and requires showing of clear error). We find that there is no manifest injustice or clear error here. As none of the exceptions to the law of the case doctrine were met, the trial judge was correct in following the law of the case as set down by Simpson I. This assignment is without merit.

II. SHOULD PREJUDGMENT INTEREST HAVE BEEN ALLOWED TO PLAINTIFFS?
Gloria Simpson argues that she should have been awarded prejudgment interest on the jury award in Simpson II. She made a Motion to Assess Prejudgment Interest after the trial in Simpson II. The Motion asked for interest beginning on August 16, 1978, the date of the loss, or beginning sixty days after the day of the loss. After argument the Motion was overruled.
"An award of prejudgment interest rests in the discretion of the awarding judge. Under Mississippi law prejudgment interest may be allowed in cases where the amount due is liquidated when the claim is originally made, or where the denial of the claim is frivolous or in bad faith." Aetna Casualty & Surety Co. v. Doleac Electric Co., 471 So.2d 325, 331 (Miss. 1985) (citations omitted); see also State Farm Mutual Automobile Insurance Co. v. Bishop, 329 So.2d 670 (Miss. 1976) (interest allowed because of insurer's bad faith). As to whether a claim is liquidated, interest has been denied where "there is a bona fide dispute as to the amount of damages as well as the responsibility for the liability therefor." Grace v. Lititz Mutual Insurance Co., 257 So.2d 217, 225 (Miss. 1972). The insured must include a proper demand *1381 or request for prejudgment interest, including from when it is allegedly due, in the pleadings. Maryland Casualty Co. v. Legg, 247 So.2d 812 (Miss. 1971). In accord is Commercial Union Insurance Co. v. Byrne, 248 So.2d 777 (Miss. 1971), where the Court stated:
[I]t seems to be clear from what was said in these cases and other cases that where there is a total loss and the valued policy statute comes into play, the insured is entitled to interest from the time the payment is due, provided a proper demand for interest is made. It is also clear where the loss payable under fire or windstorm policy is liquidated or is capable of being made certain by a mere calculation the insurer is liable for interest if properly demanded from the date payment is due under the terms of the policy.
... .
We are of the opinion that where as in this case there is a justifiable dispute as to the amount of the loss, the insured is not entitled to interest until the amount of the claim has been made certain or liquidated. However, we can envision cases where, in the discretion of the trial court interest should be allowed although the amount of the loss is in dispute and for this reason we do not foreclose the allowance of interest in every case where the claim in unliquidated.
Byrne, 248 So.2d at 783.
The request for interest from the date of August 16, 1978, was properly included in the Simpsons' declaration (complaint). Because this Court reversed and rendered on the issue of bad faith in Simpson I, it cannot serve as a basis for an award of prejudgment interest. The remaining question is whether the amount due the Simpsons was liquidated when their claim was originally made. The complaint alleged, and State Farm admitted in its answer, that the insured premises and its contents were a total loss. There was no question as to the amount of the coverages involved. This amounts to a liquidated claim, and as such the trial court erred in not allowing prejudgment interest. The policy in question states that "[t]he amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided." The Simpsons executed their sworn proof of loss on October 6, 1978. Gloria Simpson is entitled to prejudgment interest at the rate of 8% per annum accruing from December 6, 1978. Davis v. Continental Casualty Co., 560 F. Supp. 723 (N.D.Miss. 1983); Miss. Code Ann. § 75-17-7 (Supp. 1978) (setting rate for postjudgment interest).

III. WAS IT ERROR TO ALLOW STATE FARM TO RECEIVE A CREDIT AGAINST THE CONTRACT DAMAGES AWARDED TO THE SIMPSONS?
During the trial in Simpson II George Johnson, a State Farm superintendent, was called by Gloria Simpson as an adverse witness. On direct examination, he testified that Kimbrough Investment Company had held the mortgage on the Simpson property. State Farm introduced through Johnson a sworn statement of proof of loss and a letter, submitted by George Smith of Kimbrough Investment Company. The letter requested that the Simpsons' mortgage debt of $27,813.75 be paid off, after which Kimbrough would assign the deed of trust to State Farm. State Farm also introduced a draft for $27,813.75, by which it had paid Kimbrough. Gloria Simpson did not object to the introduction of these items. The assignment and the deed of trust were never introduced.
State Farm filed a post-trial motion, asking that the jury award be reduced by the amount it had paid to Kimbrough. A hearing was held on this and other post-trial motions on December 5, 1986. Despite argument that a setoff could not be given based on a note and deed of trust which were not before the court, the court decided that as a matter of law State Farm was entitled to the setoff, and reduced the jury award from $50,690.00 to $22,876.25.
Gloria Simpson argues that State Farm cannot ask for a setoff and cancellation of *1382 the mortgage when it has not introduced the note or deed of trust in question, and when there has been no allegation of default or affirmative action on the note, such as foreclosure. She also relies on Miss. Code Ann. § 11-7-65 (1972), which requires that an account be filed with the pleading, along with a copy of any writing intended to be set off. State Farm attached only a copy of the Simpsons' policy to its answer. State Farm relies on Talman Federal Savings & Loan Ass'n v. American States Insurance Co., 468 So.2d 868 (Miss. 1985), to the effect that it had an independent contractual obligation to pay Kimbrough. This may be true, but nothing in Talman provides that State Farm should gain any greater rights than the original mortgagee, Kimbrough. See Ford v. White, 495 So.2d 494 (Miss. 1986); Indiana Lumberman's Mutual Insurance Co. v. Curtis Mathes Manufacturing Co., 456 So.2d 750 (Miss. 1984). State Farm, however, gained all rights vested in Kimbrough by the note and deed of trust executed by Simpson and assigned by Kimbrough. What State Farm attempted to do via setoff was to accelerate the note and deed of trust without any evidence of default on the part of the Simpsons. There is nothing in the record or case law which persuades us that Kimbrough would have been able to take such an action, and as such State Farm may not. The setoff cannot be allowed when the documents containing the rights of the parties, the note and deed of trust, are not before this Court. The trial court erred in allowing the setoff, and the original jury verdict of $50,690.00 is reinstated. The award of prejudgment interest discussed in Part II will be based on this amount. The remainder of the circuit court's judgment is affirmed.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART.
ROY NOBLE LEE, C.J., HAWKINS, DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.