CONTINENTAL TURPENTINE AND ROSIN Co., et al. *v.* GULF NAVAL STORES Co.

No. 42319          June 11, 1962          142 So. 2d 200

466

*Mize, Thompson & Mize,* Gulfport; *Charles Kohlmeyer, Jr., Lemle & Kelleher,* New Orleans, La., for appellants.

468

*Morse & Morse,* Gulfport, for appellee.

Rogers, J.

This cause of action arose under the following facts and circumstances: On the 15th day of May 1947, Alabama Naval Stores Company, a corporation, organized under the laws of the State of Alabama; Continental Turpentine and Rosin Corporation, a corporation organized under the laws of the State of Mississippi; Delta Pine Products Corporation, a corporation organized under the laws of the State of Louisiana; Dixie Pine Products Company, a corporation organized under the laws of the State of Mississippi; Southern Naval Stores Division of Leach Brothers, Inc., a corporation organized under the laws of the State of Wisconsin, and the defendant Gulf Naval Stores Company, a partnership of Gulfport, Mississippi, entered into a contract for the purpose of forming an export association, under the procedure set out in an Act of Congress, commonly called the "Webb-Pomerene Act", and is Title 15 U. S. C. A., Secs. 61-65.

The association opened an office in Gulfport, Mississippi. A managing board of directors was created, an executive secretary was employed, and the business of exporting naval stores was begun under the association name of "Wood Naval Stores Export Association."

One of the provisions set out in the Articles of Association required each member to maintain a deposit of $5,000. with the association to insure the faithful performance of the contract by its members. Under Article 8 of the contract, it was agreed by the members that the board of directors could impose a fine, in its discretion, upon any member of the Association who exported any naval stores produced by it, other than through the Association. It was agreed under Sec. 8 of the contract that the fine should not exceed $5 per drum for wood rosin, and $.25 per gallon for wood turpentine or pine oil or dipentene.

After having begun business, the Association entered into a contract with Newport Industries, Inc. of New York, appointing the New York corporation exclusive agent for the sale of products of the Association. It was understood, however, that the New York corporation reserved the right to sell naval stores obtained through other sources, in addition to the naval stores sold for the Association. In accordance with the contract made with the Newport Industries, it began placing orders with the Association, which were in turn allocated to the members of the Association, including the Gulf Naval Stores Company.

On May 31, 1950, the assets of the partnership of Gulf Naval Stores Company, were conveyed to John T. Latimer and Mrs. Julia Latimer, who continued business under the trade name of the original partnership. A new partnership was organized on January 1, 1951, and assets of the partnership (including the $5,000 on deposit with Wood Naval Stores Association) were conveyed defendants, John T. Latimer, Mrs. Julia Lati-

mer, Louis L. Latimer, J. Alton Latimer, Walter F. Latimer, Ray A. Latimer and Mrs. Julia Priscilla Latimer Poole. The new partnership continued business under the old trade name, "Gulf Naval Stores Company", and the partnership continued to participate in the administation of the affairs of the Association.

On July 3, 1952, the partners filed suit in the Circuit Court of Harrison County, Mississippi. They alleged that the partnership was no longer a member of the Wood Naval Stores Export Association, and sought a judgment against the Association for the $5,000 deposit, held by it, belonging to the partnership, and for the sum of $3,668.13 alleged to be due to the partnership by the Association as a result of the sale of FF wood rosin by the Gulf Naval Stores Company through the Association. The suit was removed to the U. S. District Court, and later remanded to the Circuit Court of Harrison County, Mississippi. The Association filed its answer to the declaration denying that the partnership had withdrawn from the Association and asserted a claim to the funds held by it belonging to the partnership. The Association charged that the partnership had violated the Articles of Association, by shipping in export naval stores through agents other than the Association and Newport Industries, Inc. A judgment was entered in the Circuit Court of Harrison County in favor of the partnership; whereupon defendant, Wood Naval Stores Export Association appealed to this Court. The case is reported in 220 Miss. 652, 71 So. 2d 425. This Court reversed the trial court and pointed out that the testimony for defendant showed that the Gulf Naval Stores Company had exported 460 drums of FF wood rosin in violation of the Articles of the Association; that the board of directors had imposed a fine of $5 per drum for FF wood rosin exported by the partnership in violation of Article 8 of the contract amounting to a total of $2,300. We held that the partnership was

still a member of the Association, and under the testimony introduced in that case, the Court held that the fine of $5 per drum for FF wood rosin shipped in export in violation of the contract was "liquidated damages." We dismissed without prejudice the partnership suit as to the $5,000, holding that the Association was entitled to retain the deposit until it was released under the terms of the agreement. The balance held by the Association was then paid to the partnership and the case settled.

Thereafter, on January 7, 1955, suit (the present suit) was filed by the Wood Naval Stores Export Association, against the partners of the Gulf Naval Stores Company, in the Chancery Court of Harrison County, Mississippi. The original bill of complaint alleged that sometime after the defendant Gulf Naval Stores Company became a member of the Association, the partnership set about deliberately violating the Articles of the Association by shipping in export trade, other than through the Association and its agent, Newport Industries, Inc., naval stores, namely, FF wood rosin. The bill of complaint alleged that the violation of the contract had caused irreparable damages to the members of the Association, that the number of drums shipped, the names of the purchasers, and the dates of shipment, were unknown to the complainant and that such information was wholly within the knowledge of the partners of the Gulf Naval Stores Company. The bill of complaint charged that request had been made upon the defendant partnership for the information and for an inspection of the books of the partnership, but that the Gulf Naval Stores Company had failed to comply with the request of the complainant and had refused to permit inspection of its books. The complainant further charged that the defendant partnership would continue to violate the Association agreement unless prevented from so doing by an injunction from the chancery court.

It alleged that notice was given of a special meeting of the Board of Directors of Wood Naval stores Export Association for the purpose of taking action on the report that a member had violated the Articles of Association, and notice was sent by registered mail to Louis A. Latimer, Director and representative of the Gulf Naval Stores Company; that a similar notice was sent to the partnership, Gulf Naval Stores Company. It is also alleged that at the meeting of the board of directors, evidence was produced and considered with reference to the alleged violation of the Articles of Association by the Gulf Naval Stores Company, and liquidated damages of $5 per drum of FF wood rosin was assessed against the Gulf Naval Stores Company in accordance with Sec. 8 of the Articles of Association. It is further charged that the Secretary of the Association demanded that the partnership advise the Association of the number of drums of FF wood rosin shipped in export in violation of the contract, but the partnership failed and refused to produce the desired information.

It was alleged that the continued and deliberate violation on the part of the Gulf Naval Stores Company damaged the complainant in the sum of $5 per drum of FF wood rosin shipped in violation of the contract, and that this violation already amounted to more than $100,000, but the exact amount, dates of shipments, to whom shipped, etc. were not within the possession of the complainant or any of its members except the defendants. It also alleged that the violation would continue so that the defendant would be unable to respond in damages unless the defendant was enjoined by the court.

The complainant attached interrogatories to be propounded to the defendant, asking information as to the number of barrels shipped in export in violation of the agreement and other information with reference to entering into an exclusive agency contract with Whit-

ney Oettler of Savannah, Georgia. The bill of complaint prayed that the court require the defendant to faithfully account for each and every drum of FF wood rosin produced and exported, or caused to be produced and exported, from May 15, 1947, to the date of the filing of the bill of complaint. The complainant prayed that the court ascertain the amount produced, sold and exported, or caused to be produced, sold and exported, in violation of the articles of the Association, and prayed for a writ of injunction restraining defendant from further violation of the Articles of the Association.

A special demurrer was filed to the bill of complaint and later overruled by the trial court. The defendants filed an answer denying that the partners of the new partnership were parties to the Articles of Association, and stated they had done no business with Wood Naval Stores Export Association since they had withdrawn from it on January 1, 1951. They admitted that they were shipping naval goods in export but denied that they were violating the Articles of Association. They did not answer the interrogatories attached to the original bill; whereupon the complainant moved the court for a decree pro confesso, or, in the alternative, an order to require defendants to answer the interrogatories. The Chancellor overruled the motion to require defendants to answer the interrogatories, and entered an order permitting an appeal to the Supreme Court. On appeal, this Court directed the trial court to require defendants to answer the interrogatories attached to the bill of complaint.

When the mandate of the Supreme Court was returned to the Chancery Court, the Chancellor entered an order requiring defendants, partners in Gulf Naval Stores Company, to answer the interrogatories. The defendants answered the interrogatories and set up several affirmative defenses. They denied that the complainant Wood Naval Stores Export Association was

damaged in the sum of $5 per drum for the rosin shipped in export by defendants. They admitted they had shipped 97,595 drums of FF wood rosin during the period from January 14, 1953, through January 7, 1955, and that the penalty imposed by the board of directors would amount to $487,975. Defendants pointed out that two of the members of the partnership had died since the case had been filed, and the Chancellor permitted the complainant to amend so as to bring into court Louis L. Latimer, as executor of the estates of J. T. Latimer and Walter F. Latimer, deceased. The court also permitted the members of the Association to intervene so as to continue the suit in their corporate names, rather than in the trade name of Wood Naval Stores Export Association.

The complainants then amended the bill of complaint to show that during the period from March 1952 to May 10, 1957, the defendants had not paid their assessment of $200 per month due for their pro rata part of the expenses of the Association, totaling $12,400 for a period of sixty-two months. It was alleged that the Board of Directors credited defendants with $5,000 on deposit and $250 accrued interest, plus $40, alleged to be defendants' part of the appraised value of the office furniture.

Defendants amended their answer so as to deny that Wood Naval Stores Export Association was a legal entity and denied it could transfer the interest in the property of the Association to members, and stated that defendants had no notice of the meeting of the board of directors at the time the transfer was alleged to have been made. The amended answer of the defendants again denies that the members of the Association were damaged by the sale of FF wood rosin in export by the partnership. They allege that after having answered that the amount of the fines and penalties alleged to be liquidated damages due to the Association was $487,-

975, they have now filed answers to the new interrogatories filed by complainants "showing that the claim of complainants under the guise of liquidated damages as of May 15, 1957, would total $1,071,690." Defendants alleged that the Articles of Association were void and against public policy because the "liquidated damages" are in fact a penalty and fine; that such a fine was unjust and disproportionate to any alleged damages suffered from defendants' alleged breach of the contract. Defendants deny that they are required to pay an assessment of $200 per month because they were never notified of such an assessment, and that the Association was required to give defendants notice of the amount due in respect to the prior calendar quarter.

Defendants, members of the partnership, Gulf Naval Stores Company, filed a cross bill demanding judgment of the members of the Wood Naval Stores Export Association for the $5,000 held on deposit by the Association belonging to the partnership, together with accrued interest. Defendants filed interrogatories to be propounded to each member of the Association.

Complainants, after having failed to obtain an order of the court to strike the interrogatories, answered the cross bill, and denied that the cross-complainants were entitled to the return of the $5,000 deposit, and denied that the Articles of Association were void as being against public policy. Cross-defendants plead res judicata and stated that the matter of the $5,000 had been litigated in a former opinion of the Supreme Court.

When the pleadings had been joined, and before the evidence was submitted to the Chancellor, the complainants filed a motion requesting judgment for the complainants in which it was asserted that the answers and amended answers presented no genuine issue of facts and that they were entitled to a judgment, as a matter of law; that the law of the case had been decided by the Supreme Court; that defendants had disclosed the

extent of the violation of the contract and the extent of the damages suffered by complainants. This motion was overruled by the Chancellor, and complainants proceeded to introduce a copy of the Articles of Association signed by the parties; and the contract with the Newport Industries, Inc., and the record of the original case between the parties reported in 220 Miss. 652, 71 So. 2d 425. The interrogatories, exhibits, and answers to the interrogatories were introduced in evidence. The minutes of the Association were proven and introduced, showing the assignment of the suit at bar to the complainants. It was also shown that notice of the expenses of the Association were not sent to defendants because defendants' attorney wrote a letter requesting that no further notice be given them of the expenses of the Association.

The testimony showed that a fine of $31,150 had been imposed upon Dixie Pine Products Company, one of the members of the Association, which represented a fine of $5 per drum for FF wood rosin sold in export in violation of the contract.

Defendant Louis Latimer testified that from January 7, 1953, through January 7, 1955, defendants shipped 628,500 pounds, or approximately 5,000 drums, of hot FF wood rosin in tank cars to Whitney and Oettler. Defendants admitted that they were shipping FF wood rosin in export, sometimes at a loss, and stated that shipments were not made through Newport Industries, Inc. because it was exporting FF wood rosin in competition with defendants. It was admitted that defendants had shipped $1,071,690 worth of rosin in export during the time it had attempted to withdraw from the Association. Testimony showed that the books of the defendants had been destroyed and that they could not inform complainants the number of drums of FF wood rosin exported. Defendant Louis Latimer admitted that as soon as he got a chance to break the contract he did

so, but that during the "Korean situation * * * business was good. Everybody shipped and it didn't matter whether you shipped through * * * you had plenty of business all around."

When complainants rested their case, defendants made a motion for a directed verdict, on the grounds that no damages were shown by complainants and that assessment of $5 per drum for FF wood rosin by the board of directors under Sec. 8 of the Articles of Association was a "fine", a "penalty" or a "forfeiture", and was unenforceable; that the question of injunction was now moot, and a judgment should be rendered in favor of defendants. The Chancellor overruled this motion and defendants introduced the interrogatories propounded by defendants and answers made thereto by each of the complainants. The answers of complainants to the interrogatories of the defendants show that they were making a net profit of less than $1.22 per drum for FF wood rosin at the time they entered into the Articles of Association. It was shown by the testimony that the production potential of the Association was believed to be approximately twenty percent of the U. S. Market, and that in 1947 the market was approximately one million two hundred thousand drums of FF wood rosin. There was no testimony to show that the export of naval stores by the defendants caused any purchasers to divert from the Newport Industries, Inc. to purchase naval stores from defendants. The testimony shows that during the time complainants shipped through Newport Industries, Inc. they realized a net profit of $2.76 per drum. Witnesses introduced as expert witnesses for complainants gave their opinions that complainants had a loss of $8.96 to $10.00 per drum for their proportionate part of the FF wood rosin on additional business that complainants might have gotten during this particular period. At the conclusion of the case the Chancellor rendered a written opinion and

entered a decree in favor of complainants. He found that defendants were partners in the partnership of Gulf Naval Stores Company, and owed to the Wood Naval Stores Export Association the sum of $200 per month for a period of sixty-two months. This sum represented the assessment due to the Association for defendants' pro rata part of the expenses of the Association during the period while attempting to withdraw from the Association. From the total of $12,400 due the Association, the Chancellor gave the defendants credit for $5,000 on deposit and $250 accrued interest, and allowed $40 credit for the interest of Gulf Naval Stores Company in the furniture and fixtures of the Association.

The Chancellor denied recovery for the alleged liquidated damages assessed by the board of directors of Wood Naval Stores Export Association of $5 per drum against defendants, and held that the fine mentioned in Sec. 8 of the Articles of Association was a "penalty" and not a genuine pre-estimate of damages at the time of making the contract.

Appellants, members of the Wood Naval Stores Export Association, have appealed from the decree of the chancery court to this Court and seek a reversal of the judgment of the trial court on the grounds that the law of the case was settled in a former opinion of this Court; that the principle of res judicata and the doctrine of collateral estoppel applies to the interpretation of Sec. 8 of Articles of Association, and therefore it is now settled that Sec. 8 provides for "liquidated damages" and is not a "penalty." It is claimed that appellants have met the burden of proof, and have shown the amount of liquidated damages due by appellees at $5 per drum for FF wood rosin exported by appellees in violation of the contract, and were entitled to a judgment in the trial court.

In the case of Wood Naval Stores Export Association v. Latimer, et al., 220 Miss. 652, 71 So. 2d 425, (hereafter referred to as the first case), this Court pointed out that plaintiffs there (appellees now) introduced no evidence to rebut the testimony that the "fine" under Sec. 8 was liquidated damages, and the Court said: "The appellees in the case that we have here offered no proof to show that the amount of the 'fine' provided for in Article 8 of the articles of association was unjust or oppressive, or that the amount claimed was disproportionate to the damages resulting from the appellees' breach of the covenants of the agreement."

After judgment was entered in the first case, it was paid off, settled and closed. Appellants now argue that since this Court held, under the evidence in the first case, that the "fine" there assessed was "liquidated damages" rather than a "penalty", that opinion became the "law of the case" in the present action and appellees are now estopped to again litigate the meaning of Sec. 8 of the Articles of Association. We must therefore in the outset deal with whether or not the first case is the "law of the case" in the present suit.

The doctrine of "law of the case" is a rule of practice adopted by the courts and rests upon principles of res judicata. The rule is distinct from the rule of stare decisis and it is not a limitation upon the power of the court. In Re Wecker's Estate, 243 N. W. 642 (Neb.); Western Fire Insurance Company v. University City, 124 F. 2d 698; Lansden v. Hart, 180 F. 2d 679.

The law of the case rule applies only to one case, and does not, like res judicata, foreclose parties or privies in one case by what has been done in another case. United States v. Davis, 3 F. Supp. 97; Carroll v. Bunt, 172 P. 2d 116; Farmers' State Bank of Texhoma, Oklahoma v. Clayton National Bank, 46 A.L.R. 952, 245 P. 543, (N.M.).

The textwriter points out in 30 A Am. Jur., Judgments, Sec. 331, p. 378, that: "The doctrine of 'law of the case' is akin to that of former adjudication, but is more limited in its application. It relates entirely to questions of law, and is confined in its operation to subsequent proceedings in the same case." It is also said in 3 Am. Jur., Appeal and Error, Sec. 985, p. 541, that: "The decisions agree that as a general rule, when an appellate court passes upon a question and remands the cause for further proceedings, the question there settled becomes the 'law of the case' upon a subsequent appeal, provided the same facts and issues which were determined in the previous appeal are involved in the second appeal. But if the facts are different, so that the principles of law announced on the first appeal are not applicable, as where there are material changes in the evidence, pleadings, or findings, a prior decision is not conclusive upon questions presented on the subsequent appeal * * *

"The doctrine of the law of the case has been frequently recognized as a harsh doctrine. Some courts have expressed their intention not to extend the application of the doctrine of the law of the case beyond the cases in which it has heretofore been held to apply. And in some jurisdictions the rule of the law of the case has been abolished, or at least modified by express statutory or constitutional provisions."

This Court said in the case of Brewer v. Browning, 115 Miss. 358, 76 So. 267, that: "We do not think, however, that this rule (law of the case) is so fixed and binding upon the court that it may not depart from its former decision on a subsequent appeal if the former decision in its judgment after mature consideration is erroneous and wrongful and would lead to unjust results. Where the facts are the same, and where there has been no change of conditions or situations as that a change of decision would work wrong

and injustice, the court may, on the subsequent appeal, correct its former decision. * * *''

■■ ■ The opinion of this Court in the first case was correct under the facts as shown by the evidence introduced in that trial. Moreover, it was a separate and distinct action from the present case. If, however, the first case were a branch of the present action, as is contended by appellants, the Supreme Court would not be bound by the opinion rendered on the first appeal, because, where the evidence on the second trial is materially different on essential elements, the decision on the first appeal will not be taken as the ''law of the case.'' Nedela v. Mares Auto Co., 193 N. W. 345; New York Life Ins. Company v. Golightly, et al., 94 Fed. 2d 316 (Ark.); Thompson, et al. v. Flynn, 58 P. 2d 769 (Montana); Edmonston v. Kansas City, 139 S. W. 2d 1073 (Mo. App.); McDay v. Long, 19 S. E. 2d 436; Potts v. Rader, 20 S. E. 2d 690 (Va.); State, ex rel., Anderson Motor Service Company v. Public Service Com., et al., 134 S. W. 2d 1069; Myers v. Atlantic Coast Line R. R. Company, 112 So. 2d 263 (Fla.); Carpenter v. Durell, 90 Fed. 2d 57, Writ of error Denied in 302 U. S. 721, 82 L. Ed. 557; City of Sedalia, ex rel. v. Shell Petroleum Corporation, 81 F. 2d 193, 106 A.L.R. 1327; Aetna Life Insurance Company v. Wharton, 63 F. 2d 378.

After the present case was filed, it was also appealed to this Court, and is reported as Wood Naval Stores Export Association v. Latimer, et al., d. b. a. Gulf Naval Stores Co., 229 Miss. 197, 90 So. 2d 379, and on Suggestion of Error was reported in 229 Miss. 197, 91 So. 2d 714. This Court, in an effort to prevent any misunderstanding, as to the ''law of the case'' with reference to Sec. 8 of the Articles of Association, pointed out that no proof was offered in the first case and said: ''Whether the evidence on the trial in the present case will again warrant that conclusion is an issue

to be determined on the hearing. Our decision does not preclude appellees from contesting the validity of the assessment sought to be imposed under Article 8."

It is apparent, that the "law of the case" is found in the directions of this Court to the trial court, in Wood Naval Stores Export Association v. Gulf Naval Stores Company, 229 Miss. 197, 91 So. 2d 714, and not in the first case. Cf. Stone v. Reichman-Crosby Co., 43 So. 2d 184 (Miss.); Pennington v. Purcell, 155 Miss. 554, 125 So. 79; Krauss v. Potts, 5 A. L. R. 1213, 156 P. 1162.

We do not agree with the contention of appellants that the doctrine of collateral estoppel is applicable to the facts in the present case. There was no evidence in the first case to show that the fine of $5 per drum imposed on the partners of Gulf Naval Stores Company was disproportionate to the pre-estimated liquidated damages. Sec. 8 of the Articles of Association states that: "Such fine may be in an amount not to exceed five dollars ($5.00) per drum of wood rosin * * * thus exported." The board of directors was not required to fine the full amount set out under Sec. 8. They could have fined a member of the Association, one sum at one time, and another sum at another time, so long as the fine was in keeping with the intended pre-estimated damages. When it was made to appear from the testimony, that the action of the board of directors was so disproportionate to a genuine pre-estimate of liquidated damages as to show that Sec. 8 of the Articles of Association, was originally intended to be a penalty and a forfeiture rather than liquidated damages, this Court would not be precluded from holding such a fine to be a penalty and unenforceable. This is true although this Court has heretofore held that such a "fine" under Sec. 8 was liquidated damages. See Dolores Garraway v. Retail Credit Company, et al.,

(Nos. 42,337, 42,341, not yet reported); Restatement of the Law, Judgments, Sec. 70, p. 321.

The testimony in the present case shows that at the time the Articles of Association were signed by the parties, they were getting from $.26 to $1.22 per drum net profit. A fine of $5 per drum was not a realistic pre-assessment of damages at the time the contract was made. They fixed a fine payable to the Association in a sum "not to exceed $5", and it is now apparent that this fine is a penalty. The record discloses that the members of the Association considered Sec. 8 of the Articles of Association to be a "penalty", because, the Association actually fined another of its members $5 per drum under Sec. 8, and so stated in the minutes of the Association. One of the witnesses for appellants testified after being asked: "Now Mr. Reasor, why was this $5.00 per drum placed in the Articles of Association in 1947? I want your frank and honest answer." He answered: "* * * We did not expect anyone would ever go out and violate it intentionally but we did think that unintentionally some of my production or somebody else's production might be sold to someone domestically who in turn would export and that it was up to us to police that matter to see that it did not happen * * *" "By Mr. Morse continuing: Q. If you shipped to some domestic person and it had gotten into foreign trade without your knowledge or some other member, you certainly wouldn't have imposed a fine or penalty on them, would you? A. I would. Q. You would have imposed a fine or penalty on them? A. I would have imposed a penalty, yes."

The evidence in this case shows that the export prices for FF wood rosin fluctuated, and the damages to the Association for the breach of the contract would have been different sums at different times. The fines were always the same. The testimony of Mr. Reasor is as follows: "Q. * * * Have you ever imposed a fine of

less than $5.00 on anybody, Mr. Reasor, or the Association? A. Never. Q. It has always been $5.00? A. Yes."

It is said in 15 Am. Jur., Damages, Sec. 245, p. 676, that: "As a general rule, unless it is clear that the parties intended otherwise, the tendency of the courts is to regard stipulations in contracts purporting to fix advance sums to be paid in the event of breach as of the nature of penalties, rather than as liquidated damages, because then they may be apportioned to the loss actually sustained. This is particularly true in doubtful cases or where the language used is ambiguous * * *,"

It is also pointed out by the same text in Sec. 249 on page 681, that: "In the determination of whether the amount stipulated for is to be regarded as a 'penalty' or as 'liquidated damages', the court will generally take into consideration its reasonableness — that is, whether it bears some reasonable proportion to the loss actually suffered. * * * But agreements to pay fixed sums plainly without reasonable relation to any probable damage which may follow a breach will not be enforced as agreements for liquidated damages. Moreover, if the sum stipulated is so large as to be out of all proportion to the probable or presumptive loss, and is therefore not a fair measure of the damage actually sustained, it will generally be regarded as a penalty, especially where the actual damage resulting from the breach may be readily ascertained or where the contract discloses no intention to fix the sum as liquidated damages or leaves the intention in this regard in doubt. In other words, the damages stipulated for must be such as to amount to compensation only, and if the principle or compensation has been lost sight of, the sum named will be treated as a penalty."

This Court said in the case of Shields v. Early, 132 Miss. 282, 95 So. 839, that: "It should be borne in mind in considering this question that a penalty imposed by

the terms of a contract on the party committing a breach thereof is not enforceable either in equity or at law. A penalty is provided for, for the purpose of terrorizing a party to a contract into complying with its terms. The English courts and the courts of this country have generally held that such penalties are unenforceable." See also Jones v. Mississippi Farms Co., 116 Miss. 295, 76 So. 880; 25 C. J. S., Damages, Sec. 102 b., p. 658.

We have come to the conclusion that the "fine" imposed under Sec. 8 of the Articles of Association — in the light of the testimony now introduced in this case — is a "penalty", and its enforcement at $5 per drum against the partnership Gulf Naval Stores Company, would be harsh, oppressive, and unconscionable. The testimony introduced in this case shows that Sec. 8 of the Articles of Association was not a genuine — pre-estimate of liquidated damages, but was in fact a measure to "police" and terrorize the members so that they would not violate the agreement, and is disproportionate to the actual damages.

■■■ Ordinarily, the intention of the parties will control as to whether a provision in a contract is for a penalty or for liquidated damages, and ■■■ ■ we are of the opinion that the testimony shows that the parties to the Articles of Association in this case, intended Sec. 8 of the contract to be a "penalty", and we therefore hold that it is a penalty, and as such is unenforcible. See 25 C. J. S., Damages, Sec. 103, p. 659.

■■■ The original bill filed by the Wood Naval Stores Export Association charges that the complainant was damaged by the defendants because of their breach of the Articles of Association, and prays for general relief. The members of the Association having been permitted to intervene in place of the Wood Naval Stores Export Association are entitled to general relief and damages therein sought against appellees, — partners in the partnership, Gulf Naval Stores Company, — for

486

their admitted violation of the Articles of Association.

We are therefore of the opinion, and so hold, that the decree of the Chancery Court of Harrison County should be affirmed insofar as it refused to award the penalty of $5 per drum for FF wood rosin shipped in export by the appellees, and should be affirmed insofar as it awarded damages to appellants in the sum of $7,110. We are, however, of the opinion that this case should be reversed for a new trial on the question of damages alone, so that the chancery court may determine the actual damages due appellants from appellees for the violation of the contract without regard to the penalty mentioned in Sec. 8 of the Articles of Association.

Affirmed in part; reversed in part; and remanded for a new trial on the issue of damages only.

*McGehee, C. J.,* and *Kyle, Arrington* and *Ethridge, JJ.,* concur.