# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CA-01260-SCT

*HERBERT LEE, JR.*

*v.*

*GLORIA THOMPSON AND DEBORAH DIXON*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/01/2012 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| TRIAL COURT ATTORNEYS: | EDWARD BLACKMON, JR. |
| | LANCE L. STEVENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JANE E. TUCKER |
| | EDWARD BLACKMON, JR. |
| ATTORNEY FOR APPELLEES: | LANCE L. STEVENS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 02/27/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., LAMAR AND CHANDLER, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     This is the second appeal to this Court of this case involving the 2001 settlement of thirteen diet-drug claims for approximately $32 million. Herbert Lee Jr., the attorney who handled the settlement, agreed that six percent of the gross settlement would be used to pay for "common benefit" discovery materials generated in the federal multi-district litigation (MDL) of diet-drug claims. At the settlement, Lee billed the MDL fee to the plaintiffs. After the settlement, the MDL court ordered a partial refund of the MDL fee.

¶2.    Two of the plaintiffs, Gloria Thompson and Deborah Dixon (collectively, "the plaintiffs"), sued Lee, alleging that his attorney's fee had exceeded the amount set out in the retainer agreement and that he had failed to accurately refund their portions of the MDL fee. The trial court granted summary judgment to Lee on the contract issue and to the plaintiffs on the MDL fee issue. Both Lee and the plaintiffs appealed, and in *Lee v. Thompson*, 43 So. 3d 1104 (Miss. 2010) (*Lee I*),[1] this Court reversed and remanded for a trial on the contract issue. We affirmed the grant of summary judgment on the MDL fee issue, but remanded for the trial court to "determine if the MDL fees were paid in accordance with MDL Pre-Trial Order 2152, and if not, to order such distribution." *Id.* at 1115.

¶3.    After the trial on the contract issue, the jury found in favor of Lee. The trial court determined that the MDL fees had not been paid in accordance with the MDL pretrial order, and ordered that Lee pay Thompson  $420,000 and Dixon $180,000. Lee appeals, arguing that (1) this Court erred in *Lee I* by finding that the MDL order required him to pay the entire MDL fee from his attorney's fees; (2) the plaintiffs are entitled to only $140,000 and $60,000 based on a prior representation of their attorney as to the amount owed; and (3) the plaintiffs' case warrants dismissal with prejudice due to their wrongful conduct.

¶4.    We find that Lee's assertion that the pretrial orders did not require to him to pay the entire MDL fee was decided in the first appeal and is barred by the law of the case doctrine. We further find that the plaintiffs' letter brief did not constitute a binding admission on the

---

[1] For the purposes of adjudicating this appeal, we take judicial notice of the record filed with this Court in *Lee I*.

amount of damages and that Lee's assertion that the plaintiffs should be sanctioned for misconduct is procedurally barred.

**FACTS**

¶5.     Thompson and Dixon hired Lee to represent them in litigation arising out of their consumption of certain diet drugs commonly referred to as Fen/Phen. Lee filed the lawsuit in the Circuit Court of Holmes County on behalf of Thompson, Dixon, and eleven other plaintiffs. *Lee I*, 43 So. 3d at 1106. During the pendency of the lawsuit, Lee entered into an agreement with the Plaintiffs' Management Committee (PMC) appointed by the United States District Court for the Eastern District of Pennsylvania in MDL 1203, *In re Diet Drugs*. The agreement provided that, in exchange for Lee's use of certain "common benefit" discovery materials, Lee would deposit six percent of "the gross amount of recovery of each . . . client" in the MDL 1203 Fee and Cost Account.

¶6.     The case settled in 2001. At the settlement, Thompson and Dixon signed disclosure sheets documenting the disbursal of funds prior to receiving their portions of the settlement. Thompson received the largest award, totaling more than $7.4 million. Dixon received the third-largest award, totaling more than $3.1 million. A document entitled "Global Case Expenses For Amos, et al. v. American Home Products" reflects that the global settlement amount was $32 million. The document shows that the MDL fee of $1,920,000 was deducted from the global settlement amount. The "amount to be distributed" is listed as $30,080,000, which is $32 million minus six percent, or $1,920,000. Thompson and Dixon's individual settlement sheets show that each received a percentage of the $30,080,000, minus case expenses and Lee's attorney's fee. The individual settlement sheets did not account for the

3

six-percent MDL fee. In his brief, Lee asserts that the thirteen plaintiffs agreed to pay the MDL fee when they agreed to participate in the settlement. He asserts that he paid forty-five percent of the MDL fee, and his clients paid fifty-five percent of the fee.

¶7.     In 2003, the MDL 1203 court determined that one-third of all the sums deposited in the MDL 1203 Fee and Cost Account should be returned to those who had contributed to them. Pursuant to this determination, two percent of the $32 million settlement amount was returned to Lee. Lee allocated the refund by retaining forty-five percent for himself as his attorney's fee and refunding each client one thirteenth of the remaining fifty-five percent. Thompson and Dixon contested the amount of the refund and subsequently filed this lawsuit concerning the percentage amount of Lee's attorney's fee and the amount of the MDL fee refund. The trial court granted summary judgment to Thompson and Dixon on the refund issue, finding that certain MDL pretrial orders required disbursement of the refund on a pro rata basis.

¶8.     Regarding the attorney's fee, Thompson and Dixon alleged that, when Lee undertook their representation, they had signed contingency-fee agreements providing that Lee would receive forty percent of any settlement of their diet-drug claims. But they alleged that, at the settlement, Lee instead had charged forty-five percent. In contrast, Lee claimed the contingency-fee contracts had provided for a forty-five percent fee. However, Lee was unable to produce the original contingency-fee contracts. The trial court granted Lee's motion for summary judgment on this claim, finding that Thompson and Dixon had ratified the forty-five percent fee when they signed the settlement agreement. In *Lee I*, this Court reversed the grant of summary judgment and remanded for a trial, finding that Thompson and

4

Dixon could recover if the jury determined they had been coerced into entering the settlement agreement by Lee's statement that their failure to do so would delay or prevent their compensation. *Lee I*, 43 So. 3d at 1115.

¶9.    In *Lee I*, this Court further held that Lee improperly had allocated the MDL fee to the plaintiffs in contravention of certain pretrial orders entered in MDL 1203 that applied to Lee's contract with the PMC. The first of these pretrial orders, PTO 467, recognized that the PMC had authorized certain attorneys to perform work for the common benefit of the plaintiffs in MDL 1203, known as "common benefit attorneys." MDL 1203 Pre-Trial Order 467 (Feb. 10, 1999). PTO 467 established a procedure under which a percentage of any payment by the defendant to the plaintiffs would be sequestered to provide reimbursement of costs and attorney's fees to the common benefit attorneys. The sequestered funds would be held in the MDL 1203 Fee and Cost Account. PTO 467 provided that the defendant was to deduct nine percent from any payment to a plaintiff in MDL 1203 and that amount would be deposited in the MDL 1203 Fee and Cost Account. For state-federal coordinated cases, the amount was six percent.[2]

---

[2] PTO 467 provides that, in state-federal coordinated actions, the defendant

shall deduct an amount equal to six percent (6%) of the aggregate of the amount being paid and any amounts to be paid in the future and shall pay such sum for deposit into the MDL Fee and Cost Account for distribution in accordance with the provisions of paragraphs 4 through 9 of this Pretrial Order.

Then, Paragraph 8 of PTO 467 states that:

Any sum ordered to be paid by the Court pursuant to this Order as an award of counsel fees shall be deducted from the total amount of counsel fees payable

5

¶10. Pre-Trial Order 2152 stated that it clarified PTO 467. MDL 1203 Pre-Trial Order 2152 (Sept. 12, 2001). PTO 2152 provided that the defendant was to "withhold nine percent from the gross amount of each Claim Payment for deposit into the MDL Fee and Cost Account." PTO 2152 also stated that:

> Upon receipt of the balance of the Claim Payment, a plaintiff's attorney is required to determine the amount owed to the attorney under the terms of his or her retention agreement and reduce the amount owed under the retention agreement by the amount withheld under the 9% assessment. The plaintiff's recovery shall not be affected by the 9% assessment.

MDL 1203 Pre-Trial Order 2152 (Sept. 12, 2001). PTO 2152 provided an example of a settlement distribution. This Court interpreted PTO 2152 to require that the MDL fee be assessed as a percentage of each plaintiff's claim.[3] *Lee I*, 43 So. 3d at 1110.

¶11. In *Lee I*, Lee argued that the pretrial orders did not apply to him because the Circuit Court of Holmes County had not entered an order for state-federal coordination. *Id.* at 1109. This Court held that the orders applied because Lee had "willingly participated in the MDL Common Benefit Fund, and therefore he voluntarily subjected himself to the orders of the United States District Court for the Eastern District of Pennsylvania in regard to the funds he placed in the MDL account." *Id.* at 1111. The Court concluded that, because the pretrial

---

> to individual plaintiff's counsel, it being understood that the Common Benefit Attorneys' portion shall not diminish the portion of the recovery that any plaintiff would have been entitled to receive had there been no participation by the Common Benefit Attorneys.

MDL 1203 Pre-Trial Order 467 (Feb. 10, 1999).

[3] We note that Paragraph 8 of PTO 467 explicitly applies to the six-percent assessment and requires its deduction from plaintiff's counsel's attorney's fees. In addition, PTO 2152 clarifies this aspect of the assessment of the MDL fee.

orders applied, the six percent was to be calculated from each plaintiff's claim on a pro rata basis. *Id.* This Court recognized that because the settlement was divided pro rata, each client's contribution to the MDL fee varied according to the size of that client's individual settlement. We stated:

> Lee argued in his motion for summary judgment and now on appeal that "each of [Lee's thirteen] diet-drug clients paid an equal amount of the Common Benefit Fund because each received equal benefits from the funds. Thus, each paid [one-thirteenth] of the total amount." Lee further argued, "Neither Thompson nor Dixon paid into the MDL Fund based upon the amount of their individual settlements and are not entitled to refunds based upon the amounts of their individual settlement amounts." However, Lee's argument is mathematically illogical because the assessment was a percentage, rather than a specific dollar amount. Each client cannot contribute the same amount when the assessment is a percent of their recovery unless each client recovers the same amount.

*Lee I*, 43 So. 3d at 1112. Thus, we addressed and squarely rejected Lee's argument that his clients had paid only one-thirteenth of the MDL fee.

¶12.    We held that, because PTO 2152 required the MDL fee to be paid by the attorney, the MDL fee was to be deducted from Lee's attorney's fee. *Id.* We observed that Lee erroneously had billed the MDL fee to his clients, and that, if Lee had paid the MDL fee himself as required by the pretrial orders, he would have been entitled to the entire refund. *Id.* at 1112. The Court remanded for the trial court to determine "if the settlement was distributed in accordance with MDL 1203 Pre-Trial Order 2152, and if not, to order such distribution." *Id.*

¶13.    On remand, the plaintiffs filed a Motion for Partial Summary Judgment on Judicially Determined Claims concerning the MDL fee and Lee filed a response. The trial court determined that the MDL fee had not been paid in accordance with the MDL pretrial orders.

7

The trial court determined that Thompson and Dixon's damages included "the difference between the attorney's fees paid by Plaintiffs and the amount that should have been paid under MDL 1203 Pre-Trial Order 2152." Using the example from PTO 2152 and quoted in *Lee I*, the trial court calculated the amounts due Thompson and Dixon, finding Lee owed Thompson $420,000 and owed Dixon $180,000. The trial court found that, because under the appropriate calculation Lee was responsible for the entire MDL fee, he was entitled to the refund. The trial court ordered post-judgment interest at the rate of 1.62% per annum. On the contract issue, the jury found that the original contingency-fee contracts had provided for attorney's fees of forty percent, but that Thompson and Dixon had entered into the settlement agreement providing for a forty-five percent fee without coercion. The trial court entered a final judgment on August 1, 2012.

¶14.    On appeal, Lee argues that (1) this Court erred in *Lee I* by finding that the MDL orders required him to pay the MDL fee from his attorney's fees; (2) the plaintiffs can recover only $140,000 and $60,000 due to a prior representation of their attorney as to the maximum amount owed; and (3) the plaintiffs' case should be dismissed with prejudice due to their wrongful conduct. He does not challenge the trial court's calculation of the amounts owed to Thompson and Dixon.

## LAW AND ANALYSIS

I.      WHETHER THIS COURT SHOULD REVISIT ITS HOLDING IN *LEE I* THAT, UNDER MDL 1203 PRE-TRIAL ORDER 2152, LEE IS REQUIRED TO PAY THE SIX-PERCENT MDL FEE FROM HIS ATTORNEY'S FEE.

¶15. Lee argues that this Court should revisit its holding in *Lee I* because it was incorrect. He does not take issue with the Court's finding that the pretrial orders applied to him because he voluntarily subjected himself to them by contracting for the use of common benefit materials. Rather, Lee argues that, while the pretrial orders require that an attorney pay the nine-percent fee in federal cases, they impose no requirement that an attorney pay the six-percent fee in state cases. Therefore, Lee argues, contrary to this Court's holding, the pretrial orders allowed him to bill the six-percent fee to his clients.

¶16. Lee did not raise this argument in his appellant's brief in *Lee I*. Although Lee provided no argument on this issue, this Court addressed the matter in a footnote in the opinion. Referring to the example settlement distribution provided in PTO 2152, the footnote stated that "The example was given in a case in the federal court system, in which the charge was nine percent. The state-federal coordinated cases were assessed only six percent of their settlement as the MDL fee. Regardless, the formula would work in the same manner." *Lee I*, 43 So. 3d at 1111 n.3. Lee argues that the pretrial orders do not support the Court's conclusion that the six-percent fee must be assessed against each plaintiff's claim on a pro rata basis and then deducted from the attorney's fee.

¶17. Lee did not file a motion for rehearing of the decision in *Lee I*. *See* M.R.A.P. 40(a) ("the motion for rehearing should be used to call attention to specific errors of law or fact which the opinion is thought to contain"). Lee first raised this argument during the proceedings on remand in his Motion for Reconsideration of the trial court's order awarding $420,000 to Thompson and $180,000 to Dixon. The trial court denied the motion for reconsideration. Now, Lee has filed this appeal of the trial court's order, inviting this Court

9

to overrule its holding in *Lee I*. This request implicates the law of the case doctrine. According to the law of the case doctrine, a court's mandate is binding on the trial court on remand, unless an exception applies. ***Simpson v. State Farm Fire & Cas. Co.***, 564 So. 2d 1374, 1376 (Miss. 1990) (*overruled in part on other grounds*). This Court has stated that:

> The doctrine of the law of the case is similar to that of former adjudication, relates entirely to questions of law, and is confined in its operation to subsequent proceedings in the case. Whatever is once established as the controlling legal rule of decision, between the same parties in the same case, continues to be the law of the case, so long as there is a similarity of facts. This principle expresses the practice of courts generally to refuse to reopen what has previously been decided. It is founded on public policy and the interests of orderly and consistent judicial procedure.

*Id.* at 1377 (quoting ***Mississippi College v. May***, 241 Miss. 359, 366, 128 So. 2d 557, 558 (1961)). The doctrine has its basis in the principles of res judicata. ***Cont'l Turpentine & Rosin Co. v. Gulf Naval Stores Co.***, 244 Miss. 465, 479, 142 So. 2d 200, 206 (1962).

¶18.    If a second appeal involves the same issues and the same facts as a prior appeal, the law established in the prior appeal ordinarily applies under the law of the case doctrine. ***J.K. v. R.K.***, 30 So. 3d 290, 296 (Miss. 2009). An exception to the doctrine applies when "the facts are different, so that the principles of law announced on the first appeal are not applicable, as where there are material changes in the evidence, pleadings or findings." ***Simpson***, 564 So. 2d at 1376 (quoting ***Cont'l Turpentine***, 244 Miss. at 480, 142 So. 2d at 207).  In that circumstance, "a prior decision is not conclusive upon questions presented on the subsequent appeal." *Id.* This Court has recognized another exception to the law of the case doctrine when the previous decision was manifestly erroneous and to uphold it would

10

cause "a grave injustice." ***J.K.***, 30 So. 3d at 296. In ***Brewer v. Browning***, 115 Miss. 358, 76

So. 267 (1917), the Court stated that

> We do not think, however, that [the law of the case doctrine] is so fixed and
> binding upon the court that it may not depart from its former decision on a
> subsequent appeal if the former decision in its judgment after mature
> consideration is erroneous and wrongful and would lead to unjust results.
> Where the facts are the same, and where there has been no change of
> conditions or situations as that a change of decision would work wrong and
> injustice, the court may, on the subsequent appeal, correct its former decision
> where it is manifestly wrong.

***Id.*** at 269.

¶19.    Because the issues and facts in this appeal are identical to those in the prior appeal,

the law of the case doctrine ordinarily would bar the Court's reconsideration of matters

previously decided. Lee argues that the Court's prior decision was manifestly wrong;

therefore, the Court should revisit its decision to prevent a grave injustice. In ***Simpson***, this

Court rejected the appellant's contention that revisiting a prior decision was necessary to

prevent manifest injustice. ***Simpson***, 564 So. 2d at 1380. This Court stated:

> we take this opportunity to emphasize that this court will not, absent truly
> 'exceptional circumstances,' look favorably on arguments against the law of
> the case which fall only under the 'manifest injustice' rubric. We do not intend
> to allow this avenue of attack on the law of the case to become an auxiliary
> vehicle for the repetition of arguments previously advanced, without success,
> in appellate briefs, petitions for rehearing, and petitions for certiorari.

***Id.*** (quoting ***Laffey v. Northwest Airlines, Inc.*** 740 F.2d 1071, 1082-83 (D.C. Cir. 1984)).

¶20.    We find no exceptional circumstances present to prompt our reconsideration of ***Lee***

***I***. Lee challenged the applicability of the pretrial orders in ***Lee I***. We determined that the

pretrial orders applied and required Lee to deduct the six-percent MDL fee from his

attorney's fee. It was necessary to this Court's determination of the issue for it to decide

11

whether the six-percent fee was to be paid in the same manner as the nine-percent fee. Lee now makes an additional argument that the pretrial orders did not require that the six-percent fee be paid from attorney's fees. While Lee did not raise this theory in the prior appeal, he should have done so, as the matter of the applicability of the pretrial orders and what those orders required was squarely before the Court at that time. A second appeal after remand is not an opportunity for an appellant to posit new arguments on legal issues finally determined in the first appeal. We find that no manifest injustice resulted from our decision in *Lee I* and that Lee's argument is barred by the law of the case doctrine.

II.   WHETHER, DUE TO A REPRESENTATION BY THEIR ATTORNEY, THOMPSON'S RECOVERY SHOULD BE LIMITED TO $140,000 AND DIXON'S RECOVERY SHOULD BE LIMITED TO $60,000.

¶21.   This issue concerns a letter brief by plaintiffs' counsel dated February 15, 2008, which was after the trial court entered its original order finding that the pretrial orders required pro rata distribution of the refund, but before the appeal of that order in *Lee I*. Counsel argued that the plaintiffs were entitled to refunds of two percent of their individual settlement amounts. Counsel determined that Thompson had paid six percent of her settlement, $420,000, toward the MDL fee and was entitled to a two-percent refund totaling $140,000. Counsel determined that Dixon had paid six percent of her settlement, $180,000, toward the MDL fee, and was entitled to a two-percent refund totaling $60,000. Counsel provided an alternative calculation requesting $189,000 for Thompson and $81,000 for Dixon if the court accepted their argument that Lee had deducted the MDL fee in an illegal manner. Counsel offered to stipulate to these amounts. The letter brief was filed with the trial court.

12

¶22.    Lee never agreed to the offer to stipulate damages. Nonetheless, Lee argues that the plaintiffs' specification of damages in the letter brief was binding on Thompson and Dixon, and for that reason, the trial court erred by awarding them $420,000 and $180,000, respectively, after the proceedings on remand. Lee first raised this issue in his Motion for Clarification of the trial court's order, which was denied by the trial court. He cites several cases holding that an attorney's representation to the court is binding on the client. *See MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340-41 (6th Cir. 1997) (defendant's comments in opening statements that plaintiffs had done nothing wrong did not operate as binding admissions barring evidence of comparative negligence because they were not clear, deliberate, and voluntary waivers of the right to present evidence); *Rogers v. Rogers*, 662 So. 2d 1111, 1115 (Miss. 1995) (an attorney's statement that his client had agreed to pay a certain amount in child support constituted an admission under the Mississippi Rules of Evidence).

¶23.    We reject Lee's argument that the plaintiffs are bound by the request for damages in the letter brief. The letter brief posited the amount of the two-percent MDL fee refund the plaintiffs were owed. However, in *Lee I*, this Court determined that the MDL pretrial orders had prohibited Lee from billing the plaintiffs for *any* amount of the six-percent MDL fee in the original settlement. *Lee I*, 43 So. 3d at 1112. The Court remanded to the trial court for a determination of whether the entire settlement had been distributed in accordance with the MDL pretrial orders. *Id.* Because the Court ordered the trial court to determine the total damages due to Thompson and Dixon, the letter brief was irrelevant to the issue on remand.

13

III.	WHETHER MISCONDUCT BY THOMPSON AND DIXON BARS
	THEIR RECOVERY.

¶24.	In Lee's principal brief, he argues that this Court should reverse the plaintiffs' damage award and dismiss their case as a sanction for misconduct by Thompson and Dixon. Lee argues that the plaintiffs filed this lawsuit "based on facts they knew to be false." Lee contends that the plaintiffs fabricated their claims that the original contingency-fee agreements provided for a forty-percent fee. He argues that they "maintained this fiction even when confronted with copies of the retainer agreements that demonstrated that their agreement with Lee was that he would take a 45% fee[4] as well as copies of the settlement disclosure showing that Lee was taking a 45% fee." He also points to Thompson's admission in her deposition that she offered to pay Lee's secretary $100,000 in exchange for a copy of her retainer agreement with Lee. Lee contends that the jury's verdict in his favor indicates the jury exonerated him of any wrongdoing and "soundly rejected all of Thompson and Dixon's claim to the effect that Lee cheated them out of money owed them under the settlement."

¶25.	As authority for his contention that the plaintiffs' conduct warrants the ultimate sanction of dismissal, Lee cites *Pierce v. Heritage Properties, Inc.*, 688 So. 2d 1385 (Miss. 1997). In *Pierce*, the Court affirmed the trial court's dismissal of the case because the plaintiff had filed manifestly false responses to discovery requests and made material misrepresentations in her deposition. *Id.* at 1392. The Court found Pierce's conduct

---

[4] At the trial, Thompson and Dixon contended that the copies of the retainer agreements showing a forty-five percent fee were forgeries.

constituted bad faith. ***Id.*** at 1390. While the Court generally was reluctant to impose the harshest sanction, dismissal, the Court found that dismissal is warranted when the plaintiff "knowingly refuse[s] to be forthcoming and actively withhold[s] the truth from the court and [gives] a great deal of perjured testimony." ***Id.*** at 1391.

¶26. The plaintiffs accurately point out that Lee's assertion that they committed misconduct in pursuing this lawsuit is belied by this Court's opinion remanding for a trial and by the jury's verdict finding that the contingency-fee contracts provided for a forty-percent fee. The plaintiffs assert that Lee's argument is an attempt to mislead this Court and is sanctionable. They point out that Lee did not designate the trial transcript or the verdict form in the designation of the record. Therefore, the record that initially was submitted for this Court's review did not include the jury verdict form, which was included after the plaintiffs requested supplementation. The jury verdict form showed the jury found that Lee and the plaintiffs had entered into forty-percent contingency fee contracts, that Lee had breached those contracts by charging a forty-five percent contingency fee, but that the plaintiffs had signed the settlement disbursal agreement free from intimidation, coercion, or fraud.

¶27. We find that this Court's reversal of the grant of summary judgment to Lee and the jury verdict form totally discredit Lee's assertions of misconduct. In Lee's reply brief, his counsel provides an apology to the Court for the misrepresentations, stating:

> Undersigned counsel apologizes for misleading the Court as to the jury's verdict in this case. She wrote the brief based on what she understood was the case and since this was consistent with the fact that Thompson and Dixon were awarded zero damages on the claim that they had been cheated out of their part of the settlement, counsel had no reason to question what she was told about the verdict. The Appellant's initial brief was filed on May 8, 2013.

It was not until May 29, 2013 that Appellees asked that the verdict form be made part of the record and attached the verdict form thereto.

Despite this apology, Lee continues in the reply brief to argue that Thompson was guilty of misconduct that should foreclose her recovery because Thompson: (1) stated at her deposition that she had no problem with the amount of the settlement she received, but only with the amount of the refund; (2) admitted that she offered Lee's secretary $100,000 to obtain a copy of her retainer agreement, and (3) admitted she never showed the settlement forms to her current counsel.

¶28. We find that Lee's argument is procedurally barred because Lee never requested sanctions before the trial court. "Issues raised for the first time on appeal are procedurally barred." ***McNeese v. McNeese***, 119 So. 3d 264, 267 (Miss. 2013). Notwithstanding the procedural bar, Lee has not shown that Thompson or Dixon made any false statements or misrepresentations to the trial court. In fact, in ***Lee I***, this Court determined that the plaintiffs' case presented genuine issues of material fact and ordered a trial. If the plaintiffs' arguments had been frivolous, this Court would have deemed them so at that time. Further, Lee's false assertions in his principal brief, coupled with his failure to designate the jury verdict form disproving those assertions, raise the question of whether Lee intentionally attempted to mislead this Court. While Lee's counsel asserts that the misrepresentations were due to lack of knowledge, an attorney has a responsibility to base assertions in the briefs on facts in the record. *See* M.R.A.P. 28(a)(6) ("[t]he argument shall contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and *parts of the record* relied on") (emphasis added). We

admonish Lee's counsel and all other attorneys briefing issues before this Court that all contentions respecting the facts must be based upon the record. Arguments squarely contradicted by the record may be deemed frivolous and subject to sanctions under this Court's inherent authority. *See* ***Barrett v. Jones, Funderburg, Sessums, Peterson & Lee, LLC***, 27 So. 3d 363, 370 (Miss. 2009) ("A court has the inherent power to impose sanctions in order to protect the integrity of the judicial process"); M.R.A.P. 38 ("In a civil case if the Supreme Court or Court of Appeals shall determine that an appeal is frivolous, it shall award just damages and single or double costs to the appellee").

## CONCLUSION

¶29.    Lee's assertion that the pretrial orders did not require him to pay the entire MDL fee is barred by the law of the case doctrine because the Court decided the issue in ***Lee I*** and no exception applies. The plaintiffs' letter brief did not constitute a binding admission on the amount of damages. And, Lee's contention that the plaintiffs should be sanctioned for misconduct is procedurally barred. Therefore, we affirm the trial court's judgment.

¶30.    **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, PIERCE, KING AND COLEMAN, JJ., CONCUR.**

17